IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| ARCHIE CRANFORD, | ) | |
|---|---|---|
| | ) | Case No. 1:07-CV-01136-BLW-LMB (PC) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| ASHLIE TAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Docket No. 30.) Having reviewed the Motion, Oppositions, Reply, and relevant portions of the record, the Court concludes that oral argument is unnecessary. Accordingly, the following Report and Recommendation is entered.

**FACTUAL BACKGROUND**

Archie Cranford ("Plaintiff") is detained at the Coalinga State Hospital (Coalinga) under the civil commitment provisions of California's Sexually Violent Predators Act (SVPA), Cal. Welf. & Inst.Code § 6600, *et seq*. In his Complaint, he alleges that his Eighth and Fifteenth Amendment rights were violated on June 17, 2007, at approximately 10:45 p.m., when he was not permitted to shower for 8 hours[1] or 24 hours[2] after accidentally defecating on himself, the

---

[1] In his "Complaint to the Office of Patients' Rights," Plaintiff stated that he was not able to shower for over 8 hours. (Complaint Exhibit, p. 5, Docket No. 1.)

[2] In his Objections, Plaintiff stated that he was not able to shower for over 24 hours. (Docket Nos. 31 & 33.)

REPORT AND RECOMMENDATION  1

unfortunate effect of having eaten too many prunes at dinner. (Complaint, Docket No. 1.) Plaintiff already had a rash or open sores on his legs due to an earlier reaction to laundry detergent. He alleges that the condition of his legs worsened and his legs were scarred as a result of the delay in permitting him to shower and change. (*Id*. and Oppositions, Docket Nos. 31 & 33.)

Defendant Ashlie Taylor ("Defendant") declares the following by affidavit. (Affidavit of Ashlie Taylor, Docket No. 30-3.) In June 2007, Defendant was a psychiatric technician trainee who had no authority to make decisions about patients. On June 17, 2007, Plaintiff asked Defendant if he could take a shower at approximately 10:45 p.m. Defendant checked with her supervisor, John Sanzeberrow, who advised her that Plaintiff should wait until the next morning's shower time (8:30 a.m.). According to the record, Plaintiff did not inform Defendant that Plaintiff had sores or a rash on his legs or that he had defecated on himself.

Cynthia Trevino, who was the supervisor of Defendant's unit, declares the following by affidavit. (Affidavit of Cynthia Trevino, Docket No. 30-4.) Patients at Coalinga can have up to two sets of pants and shirts at their bedside and can request at any time additional undershirts, underwear, and socks from staff. They are provided with clean washcloths and towels daily or upon request. A patient can request additional clothing and towels at any time of the day or night and would be provided with them by staff, usually within thirty minutes. The main latrine in Defendant's unit had seven sinks, four urinals, five private bathroom stalls, four soap dispensers, two paper towel holders, and hot and cold running water. Patients were permitted to use the latrine at any time of the day or night. Published policy permitted patients to shower at five different times (8:30 a.m., 11:00 a.m., 4:30 p.m., 7:30 p.m., and 9:30 p.m.); they could shower at

REPORT AND RECOMMENDATION 2

other times upon request due to unanticipated events or problems if they informed a staff member of the issue.

Cynthia Trevino further declares that patient complaints of illness or injury would be immediately referred by staff to the Registered Nurse (R.N.) at Coalinga, who would then assess the urgency of the situation. Ms. Trevino was never informed that Plaintiff had a rash resulting from a delay in taking a shower, nor did he seek medical assistance while she supervised that unit.

Darla Ainsworth, a psychiatric technician at Coalinga who worked in the unit at issue during the time period at issue, provides the following declarations by affidavit. (Affidavit of Darla Ainsworth, Docket No. 32-1.) "Head counts" to ensure that all patients are present and accounted for were conducted in that unit at 11:30 a.m., 4:30 p.m., and 9:30 p.m. The only requirement during head count was that individuals remain in the unit. There was no requirement that they stay in their assigned dorms or private rooms. If a patient was not visible, a male staff would check the shower stalls and bathrooms. Patients would be considered escapees if they could not be found in their unit at Coalinga.

## STANDARD OF LAW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the "initial burden of identifying for the court those portions of

the record which demonstrate the absence of any genuine issues of material fact." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986)). If the moving party points to portions of the record demonstrating that there appears to be no genuine issue of material fact as to claims or defenses at issue, the burden of production shifts to the non-moving party. To meet its burden of production, the non-moving party "may not rest upon the mere allegations contained in his complaint, but he must set forth, by affidavits, exhibits or otherwise, specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56; *see T.W. Electric Serv.*, 809 F.2d at 630 (internal citation omitted).

The court does not determine the credibility of affiants or weigh the evidence set forth by the non-moving party. All inferences that can be drawn from the evidence must be drawn in a light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630-31 (internal citation omitted). The Court is required, however, to determine whether the evidence set forth meets the requirements of Rule 56(c) and (e). In so doing, the Court is to look at admissibility of the *content* of the evidence, rather than the admissibility of the *form* of the evidence. *See Fonseca v. Sysco Food Service of Arizona*, 374 F.3d 840, 846 (9th Cir. 2004). Declarations that contain hearsay are admissible for summary judgment purposes if they "could be presented in an admissible form at trial." *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003).

Rule 56(c) requires the Court to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 377 U.S. at 322. The existence of a scintilla of evidence in support of the non-moving party's position is insufficient.

Rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby*, 477 U.S. at 252.

## DISCUSSION

A convicted inmate's challenge to the conditions of his confinement is properly brought under the Eighth Amendment, but the challenge of a pretrial detainee or a involuntarily-committed civil detainee is properly brought under the Fourteenth Amendment.[3] *Redman v. County of San Diego*, 942 F.2d 1435, 1440 (9th Cir.) (*en banc*), *cert. denied*, 502 U.S. 1074 (1991); *Youngberg v. Romeo*, 457 U.S. 307, 314-15 (1982). Therefore, the Court construes Plaintiff's Eighth Amendment claim as a Fourteenth Amendment claim.

Under the Fourteenth Amendment, it is clear that civil detainees have a right to adequate food, shelter, clothing, and medical care. *Id*. at 315. Civilly detained persons must be afforded "more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." *Romeo*, 457 U.S. at 322. In *Pierce v. County of Orange*, 526 F.3d 1190 (9th Cir. 2008), the Court explained the standard as follows:

> Under the Due Process Clause, detainees have a right against jail conditions or restrictions that "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535-37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). This standard differs significantly from the standard relevant to convicted prisoners, who may be subject to punishment so long as it does not violate the Eighth Amendment's bar against cruel and unusual punishment. *Id*. at 535 n. 16, 99 S.Ct. 1861.
>
> Absent evidence of express punitive intent, it may be possible to infer a given restriction's punitive status "from the nature of the restriction." *Valdez v.*

---

[3] Plaintiff also asserts that the facts presented in his Complaint amount to a Fifteenth Amendment violation. The Fifteenth Amendment ensures that neither the state nor federal governments abridge the rights of all citizens to vote. U.S. Const. amend. XV, § 1. This Amendment does not apply to the facts at hand, and the Court concludes that Plaintiff likely intended to bring a Fourteenth Amendment claim.

REPORT AND RECOMMENDATION 5

*Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002); *see Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (noting that "to constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement").

*Id*. at 1205.

Therefore, "if a particular restriction or condition is not reasonably related to a legitimate goal–if it is arbitrary or purposeless–a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id*. (relying on *Bell v. Wolfish*, 441 U.S. at 539). Stated another way, "[i]n determining whether a substantive right protected by the Due Process Clause has been violated, it is necessary to balance 'the liberty of the individual' and 'the demands of an organized society.'" *Romeo*, 457 U.S. at 320.

In *Redman*, the Ninth Circuit Court further explained:

> There are . . . limits on the extent to which pretrial detainees may claim they are being punished in violation of the fourteenth amendment. The government has "legitimate interests that stem from its need to manage the facility in which the individual is detained." *Bell v. Wolfish*, 441 U.S. at 540, 99 S.Ct. at 1874. The Supreme Court has held that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id*. at 546, 99 S.Ct. at 1878 (footnote omitted). Because of the importance of internal security within the corrections facility, "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry." *Id*. at 547, 99 S.Ct. at 1878. "[Prison practices] must be evaluated in the light of the central objective of prison administration, safeguarding institutional security." *Id*. Because "the problems that arise in the day-to-day operation of a corrections facility are not susceptible of easy solutions," prison administrators "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id*.

842 F.2d at 1440-41.

REPORT AND RECOMMENDATION  6

In addition, negligence is not actionable under § 1983, *Daniels v. Williams*, 474 U.S. 327 (1986), nor is mere irresponsible action. *County of Sacramento v. Lewis*, 523 U.S. 833, 855 (1998). Rather, a plaintiff must present facts capable of a finding of at least recklessness, *see Redman*, 942 F.2d at 1445 n.13, or "intent to harm." *Lewis*, 523 U.S. at 854.

Here, the Court concludes that Defendant Ashlie Taylor has met her initial burden of proof to show that there is no genuine issue of material fact as to the following required elements of Plaintiff's claim against her. First, Taylor has pointed to the absence of evidence showing that Plaintiff made Defendant Taylor aware that he had defecated on himself or that he had a rash or open sores on his legs. This omission supports Defendant's position that she did not act with recklessness regarding Plaintiff's condition.

Second, Taylor has shown that, despite the fact that Plaintiff was denied a shower, Coalinga policy permitted him to have a change of clothing at his bedside and to use the latrine facilities at any time. The Court agrees that Taylor has brought forward sufficient evidence to show that Plaintiff could have cleaned himself up adequately with the resources then available to him. Plaintiff has alleged in his Opposition that he was required to remain in bed for head count, or be counted as an escapee, but the Affidavit of Darla Ainsworth sets forth the policy of Coalinga that patients may be anywhere in the unit, including in the bathroom, during head count, and that they must be outside of Coalinga to be counted as an escapee. Plaintiff's Oppositions bring forward no evidence to show that this is *not* the policy of Coalinga or that he did not have the ability to use his supplies and the latrine to clean and change himself.

Third, Plaintiff has failed to show sufficient harm resulting from the circumstances. Plaintiff brings forward no medical records or opinions after the incident showing that the

prolonged exposure to defecation resulted in or exacerbated scarring on his legs, as opposed to the scarring being the natural result of the pre-existing rash. At the time of the incident, Plaintiff did not summon the R.N. to review the condition, nor was anyone who worked in the unit aware of Plaintiff's allegations of exacerbation. As the Supreme Court stated in *Ingraham v. Wright*, 430 U.S. 651, 674 (1977), a Fourteenth Amendment school corporal punishment case, "[t]here is . . . a de minimis level of imposition [upon a constitutionally protected liberty interest] with which the Constitution is not concerned."

Fourth, balancing the interests of Plaintiff and the needs of the government, the Court concludes that the Coalinga policies regarding showers, latrine use, clothing, towels, restrictions during head counts, and requests for emergency medical attention adequately protect Plaintiff and are necessary to maintain order and security at the facility. Plaintiff has not shown that these policies are arbitrary and capricious, nor has he shown that the policies at issue are punitive. The nature of the restrictions is not punitive, given that patients have clean clothes and towels available to them and a place to use the bathroom and wash up at any hour of the day or night. The alleged harm caused by the restrictions in this instance do not significantly exceed the inherent discomforts of confinement; in fact, Coalinga has set forth humane and appropriate policies in a difficult setting–involuntary civil commitment. In this instance, it appears that Plaintiff did not state the reasons for his need to shower and the person to whom he first complained was a low-level trainee. The allegations do not rise to the level of a constitutional violation in light of the record before the Court.

## RECOMMENDATION

Based on the foregoing, the Court concludes that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

The Court HEREBY RECOMMENDS that Defendants' Motion for Summary Judgment (Docket No. 30) be GRANTED.

Written objections to this Report and Recommendation must be filed within fourteen (14) days of the date it is entered on the docket, pursuant to 28 U.S.C. § 636(b)(1). The document should be captioned "Objections to Magistrate Judge's Report and Recommendation." The parties are advised that as result of failing to do so, that party may waive the right to raise factual and/or legal objections to the United States Court of Appeals for the Ninth Circuit.



DATED: **February 24, 2010**.

/s/ Larry M. Boyle
Honorable Larry M. Boyle
United States Magistrate Judge